# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

HUMBERTO MOTA,

    Petitioner,

    -vs-

WARDEN, Lebanon Correctional Facility,

    Respondent.

Case No. 1:09-cv-233

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Petitioner brought this habeas corpus case under 28 U.S.C. § 2254 to challenge his conviction in the Warren County Common Pleas Court on one count of complicity to murder (Petition, Doc. No. 1, at ¶ 5.) He pleads one ground for relief, that his conviction is supported by insufficient evidence in violation of the Fourteenth Amendment to the United States Constitution. *Id.* at ¶ 12.

Petitioner was indicted with his brother for the stabbing death of a male victim during the early morning hours of August 26, 2006, in Mason, Ohio. The brothers were tried jointly; Petitioner was convicted but his brother was acquitted. On appeal, Petitioner asserted his conviction was against the manifest weight of the evidence and was constitutionally insufficient for conviction. The Court of Appeals affirmed the conviction, *State v. Mota*, 2008 Ohio 4163, 2008 Ohio App. LEXIS 3526 (Ohio App. 12th Dist. Aug. 18, 2008), and the Ohio Supreme Court declined to consider an appeal, *State v. Mota*, 2009 Ohio 278, 2009 Ohio LEXIS 169 (2009).

Petitioner then brought this action, asserting one ground for relief:

> **Ground One:** Petition was denied due process of law by a judgment of conviction in the absence of sufficient evidence.
>
> **Supporting Facts:** Petitioner was charged and convicted for one count of complicity to commit murder ("second degree"). The evidence adduced at trial, in the light most favorable to the State, is insufficient as a matter of law to establish each essential element of the charged offense.
>
> The elements of the offense of murder in this case include purposely as a mens rea, and cause the death of another. There was absolutely no evidence adduced to even suggest that Petitioner caused the death of the victim in this case, again, in the light most favorable to the State.
>
> Moreover, the elements of the offense of complicity required proof beyond a reasonable doubt that the accused:
>
> 1. Acting with the kind of culpability required for the commission of an offense (in this case, purposely);
> 2. Aid or abet another in committing the offense.
> These are the essential elements set forth in Ohio Revised Code §2923.03.
>
> The evidence adduced at trial, again, in the light most favorable to the State, proved only that Petitioner was merely present in the area that the offense occurred.
>
> The State did not meet its burden of proof to establish that Petitioner took any affirmative action to assist, encourage or participate in the crime by some act, deed, word or gesture.
>
> The evidence regarding even Petitioner's mere presence was inferential, circumstantial, and speculative at best.
>
> The defendant charged as the principle [sic] offender was acquitted and the Petitioner was deprived of due process of law by the absence of sufficient competent credible evidence to prove each and every essential element of the charged offense beyond a reasonable doubt.

(Petition, Doc. No. 1, at 6 & 6A.)

Petitioner plainly preserve this claim for review on the merits by presenting it as a federal constitutional claim to the state courts; Respondent does not contend otherwise.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).

Since adoption of the AEDPA in 1996, federal habeas courts have been required to defer to decisions on federal claims by the state courts unless they are objectively unreasonable applications of Supreme Court case law.

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially

> indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

In a sufficiency of the evidence case, AEDPA requires two levels of deference, to the jury and to the state court which reviewed the jury determination:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. Ohio 2009). In other words, in a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA.

*Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

In deciding Petitioner's sufficiency of the evidence claim, the Court of Appeals held:

> [*P7] Appellant and his brother, Jose R. Mota ("Jose"), were both charged with murder and their cases were tried together. Jose was found not guilty by the jury. While much of the evidence related to both co-defendants, we will focus our discussion on the evidence pertaining to appellant's case.
>
> [*P8] Testimony was presented by the state that the victim and his friend were drinking on the night in question and visited other establishments before they stopped at the Mason Pub ("pub").
>
> [*P9] Appellant, Jose, and others lived in a house within walking distance from the pub. Jose told police in video interviews presented to the jury that on the night in question, he was at the pub with a friend who also lived at the house. Jose told police that he was punched in the face by a Caucasian male during an incident outside of the pub. (footnote omitted) Jose testified that he rode home with his friend, but walked back to the outside area of the pub alone, where he was involved in an altercation with the victim's friend. Four witnesses testified that they saw appellant that night at the pub with Jose.
>
> [*P10] A female employee of the pub and her boyfriend were two of the four witnesses who said they saw appellant at the pub. The female employee testified that she was standing with her boyfriend next to her vehicle after she completed her shift when she observed Jose and appellant walk past her, and shortly thereafter, saw Jose fighting with the victim's friend.
>
> [*P11] The employee testified that she heard the victim yell "help me," as he ran around the side of the building, and she recognized appellant as one of four individuals chasing the victim toward the back of the building. She stated that she could not identify any of the other three individuals chasing the victim.
>
> [*P12] The female employee's boyfriend admitted that he had been drinking that night and that he and his girlfriend were "making out" at her car. He testified that he observed appellant and other individuals chasing the victim. The boyfriend said he recognized appellant because of appellant's long hair and ponytail and he remembered appellant wearing a "wifebeater" that night. (N. 3 The

witness was not asked to describe for the jury what he meant when he indicated that appellant was wearing a "wifebeater." The term has been associated with undershirts with thin straps or no sleeves, as in a "tank" undershirt. See *State v. Manns* (Kan.App.2004), 97 P.3d 1072.)

[*P13] A police officer testified that he was patrolling the area at 2:15 a.m., and noticed no problems in the parking area of closed businesses behind the pub building. The officer testified that he responded to a dispatch and returned to the area at approximately 2:34 a.m. As he drove toward the businesses behind the pub area, he saw the victim lying on his back on the pavement, with his shirt covered in blood. The officer testified that the victim was still alive when he reached his side.

[*P14] Testimony was presented that a police canine called to the scene shortly after the victim was discovered followed a "very strong" or recent "track" from the back parking lot through the woods to the door of Jose and appellant's house. All eight occupants found in the house that morning were questioned by police and later released.

[*P15] During the interviews with police, appellant stated through a translator that he did not visit the pub that evening and was home asleep during the time of the murder. Police executed a search warrant at the house and located three white shirts stuffed into the sump pump in the basement. (N. 4 No witness described in detail for the record the three white shirts found in the sump pump, but the three exhibits admitted at trial contained two white tee-shirts with sleeves and one white sleeveless, tank-type shirt.) Both of the tee-shirts tested positive for the victim's blood. The sleeveless undershirt was negative for the presence of blood.

[*P16] Law enforcement authorities found a cell phone that belonged to another occupant of the house, as well as a "shark's tooth" necklace and a baseball hat at or near the scene. A forensic pathologist testified that the victim died from multiple stab wounds. Most of the males from the house questioned by police reportedly left town and could not be located at the time of trial.

[*P17] R.C. 2903.02(B) states that no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence which, according to the bill of particulars in the instant case, was felonious assault. See, also,

R.C. 2903.11 (felonious assault statute).

[*P18] The jury was instructed that before appellant could be found guilty, the jury must find beyond a reasonable doubt that appellant "knowingly aided and abetted another in committing the offense of murder." See R.C. 2923.03 and R.C. 2901.22(B).

[*P19] To support a conviction for complicity by aiding and abetting, the evidence must show that the accused supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the accused shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. *State v. Johnson*, 93 Ohio St.3d 240, 245, 2001 Ohio 1336, 754 N.E.2d 796; *State v. Crutchfield,* Warren App. No. CA2005-11-121, 2006 Ohio 6549, P23.

[*P20] Criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. Johnson at 245; Crutchfield, P23. The mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor. Johnson at 243.

[*P21] Reviewing the evidence most favorably for the state on appellant's sufficiency challenge, we find that a reasonable jury could have found beyond a reasonable doubt all of the elements of the offense of murder.

[*P22] Testimony was presented from four witnesses that appellant was observed at the pub, although he claimed he was at home that evening. Two witnesses testified that appellant was one of the individuals chasing the victim around the back of the building, which is the area where the fatally-wounded victim was found shortly thereafter. In addition, a police canine followed a track from the crime scene to the house where appellant and others were found and a shirt similar in style to the one appellant was identified as wearing was concealed in the sump pump of the house along with the two shirts that contained spots of the victim's blood.

[*P23] We are cognizant that this case turns on circumstantial evidence, but "proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence," *State v. Nicely* (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236, and circumstantial evidence has no less value than the others.

> [*P24] Appellant argues that he presented the testimony from three independent witnesses who reported that they are familiar with appellant and did not see him at the pub that night. Appellant stresses that many of the occupants living in the house that night have absconded, while appellant did not. Appellant also argues that even if he were present, the evidence does not support the finding that he supported, assisted, encouraged, cooperated with, advised, or incited the principal in the murder.
>
> * * *
>
> [*P26] The jury determined that appellant participated in the events that led to the victim's death, that appellant's participation rose to the level of complicity to murder, and his intent was shown by his presence, companionship and conduct before and after the offense was committed.

*State v. Mota*, 2008 Ohio 4163 (Ohio App. 12th Dist. Aug. 18, 2008).

The Court of Appeals applied the correct law in reaching its decision. While it cited *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991), that case embodies the *Jackson v. Virginia* standard.

This Court cannot conclude that the Ohio Court of Appeals decision is an objectively unreasonable application of *Jackson v. Virginia*. In the first place, there was plainly sufficient evidence to place Petitioner at the bar. While there were witnesses who said they did not see him there, four witnesses placed him there. It is also completely understandable that the witnesses in the parking lot would have been able to identify him as opposed to the other three persons because he had long hair and a distinctive shirt. The dog trace evidence, of which Petitioner is scornful, adds little in itself, but it provided sufficient probable cause to ground a search of Petitioner's residence which turned up three undershirts which had been hidden in a sump pump. That chain of circumstances supports the direct identification of Petitioner as the person in the "wifebeater" who was seen by two witnesses chasing the victim while the victim was shouting "help me." There

seems to be no doubt that the victim was feloniously assaulted – assaulted with resulting serious physical wounds – by being stabbed and that he died of those stab wounds. From the testimony that Petitioner helped chase the victim down to the place where he was stabbed and then fled the scene with at least two others who were eager to hide their undershirts, the jury could reasonably have inferred that Petitioner was engaged in a common pursuit with those others, rather than just being present. There is no suggestion in the evidence that anyone aside from the four doing the chasing could have arrived and done the stabbing. Without any testimony from a competent expert about how the blood might have spurted from the victim, the fact that none of the victim's blood was on Petitioner's undershirt proves nothing. Conversely, the fact that his undershirt was hidden with two undershirts of others which had the victim's blood supports an inference that he was engaged in a common pursuit with whoever stabbed the victim. Petitioner questions the sufficiency of the evidence for mens rea, but the jury could rightly find purpose to inflict serious bodily harm from the chasing and the subsequent stabbing.

## Conclusion

Because the evidence, construed most favorably to the State, supports the conclusion that Petitioner was complicit in the victim's murder, the Court of Appeals decision is an objectively

reasonable application of *Jackson v. Virginia*. Therefore the Petition is without merit and should be dismissed with prejudice.

March 30, 2010.

s/ **Michael R. Merz**<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).